Good morning, Your Honor. Ryan Bounds for the United States, the appellant in this matter. May it please the Court. In reversing — excuse me, in dismissing the indictment in this criminal prosecution, the district court below held that the defendant's apparent eligibility for a voluntary departure as relief from removal during his removal hearing in 2004 could be assessed with respect to this Court's subsequent precedent and could be deemed to be available even though this Court's precedents at the time and the precedents of the Board of Immigration Appeals at the time plainly foreclosed such relief from removal. In fact, that is undisputed and was not even considered by the district court. In dismissing the indictment, the district court erred in holding that apparent eligibility, which is the standard under the regulation, can be determined without respect to this Court's then-prevailing case law. This Court, in fact, has never held that an alien in removal proceedings is entitled to advice about his apparent eligibility for relief from removal that is inconsistent with this Court's then-prevailing holdings. In fact — Kagan, let me ask you about Lopez-Velasquez, because you rely heavily on Lopez-Velasquez in your briefing. And Lopez-Velasquez says, well, the general rule is we don't fault the I.J. for not anticipating new case law, but under certain narrow circumstances, citing Leon Paz, we do. We will look at subsequently decided case law in making the 1326d analysis. What's the delineation between — how do we distinguish between those cases where we don't fault the I.J., we don't say that there was a due process issue for purposes of a collateral attack, and those where we do? I mean, Leon Paz was a Saint Cyr type situation. So help me understand how we would draw that line in light of Lopez-Velasquez. At the very least, the line in Lopez-Velasquez clearly falls along whether there was holdings — whether there were holdings by this Court and the Board of Immigration Appeals that interpreted the statutory provision at issue. There, of course, it was domicile for purposes of 212c relief. In this case, it's voluntary departure and the definition of aggravated felony. But it's plain in the Lopez-Velasquez context that there was no holding from this Court about the potential retroactive effect of Saint Cyr. It was an open question when the removal proceedings that issue in that case occurred. Similarly, or — But, Leon Paz, I think there was a BIA decision saying, we read Ed Penn and IRERA to apply in this way, and the I.J. followed that, correct? I don't — I don't know that there was a Board of Immigration Appeals decision squarely on point. That was a fairly early removal proceeding. I believe it was 1998, so within about a year of the effective date of IRERA. In any event, you know, it's not the government's position that this Court can't answer a question de novo and determine that both the Board of Immigration Appeals and the I.J. got it wrong as a matter of first impression. Our position is a narrower one, which is where this Court has held to the contrary, that the BIA and the I.J. were correct when the advice was given. Well, even Saint Cyr, though, was not absolute in the sense that the aliens still had to show detrimental reliance so that Saint Cyr did not apply retroactively to an alien who decided to go to trial rather than plead guilty. Fair enough. But again, the issue for purposes of examining this case was whether there was any precedent holding that it might be the case, or it's presumptively the case that the 212c amendments were not retroactive, and there was no such holding. And so the I.J.'s advice couldn't be assessed against the background of this Court's holdings. That is plainly not the case here. It is undisputed that against this Court's holdings, the I.J.'s advice to the defendant in 2004 was correct. He was not eligible for voluntary departure because he had committed sexual abuse of a minor and had been convicted of sexual abuse of a minor when he was convicted of third-degree rape in Oregon. Now, there's no Ninth Circuit case specifically that at the time the I.J. made the decision that was specifically construing the particular statute issue. Is that right? That's right. So we have, like, Barron-Medina and the statutes that they were construing referred to minors who were 14 years. Barron-Medina referred to a California statute, Penal Code 288a, that specifically referred to victims under the age of 14. Then the year before the removal proceeding in this case, there was the Virginia Carnal Knowledge statute that referred to victims under the age of 15. And importantly, this Court in Barron-Medina affirmed the fact that the California statute categorically constituted sexual abuse of a minor totally without respect to any age difference requirements. There is none in that case. And the 14-year-old cutoff in that statute wasn't central either, because, of course, in 2003 this Court in Parira San Maron relied on Barron-Medina to find the case, the statute of the issue in that case, which involved victims older than 14, was also a sexual abuse of a minor conviction. So let's assume for the moment that we deem Barron-Medina and that line of cases to be squarely on point in saying that the statute at issue under our case law, the statute at issue here, the crime of conviction, would have been sexual abuse of a minor. Is the government seeking a rule that where there's Ninth Circuit opinion more or less they can't be faulted for not anticipating on Baca Pigeon or subsequent Supreme Court opinion that might change that law? Is that the rule you're looking for? Exactly. And we contend that that is the rule of Lopez-Velasquez. Again, in Lopez-Velasquez, the argument about the proper interpretation of domicile for purposes of the defendant's potential eligibility or apparent eligibility for cancellation of removal was not necessarily foreclosed by Castillo-Felix, the 1979 decision, as is plainly evident from the fact that the case on which he relied that was a year after his removal was simply a three-judge panel decision that held a new statute, a new day for the interpretation of domicile. So it can't be argued that it has to be squarely on point. It has to be an Asbury-like decision that says Oregon Rape III is categorically a sexual abuse of a minor. And I should emphasize also that not only was this Court's case law squarely supporting the IJ's advice to the alien in 2004, but the IJ was also relying on an even broader interpretation of the definition of sexual abuse of a minor by the BIA in 1999 in matter of Rodriguez-Rodriguez. And that definition, which was very broadly encompassing, was, albeit subsequently, but affirmed by this Court as entitled to deference and a proper interpretation of sexual abuse of a minor. So here we have a BIA precedent decision en banc holding that the definition of sexual abuse of a minor is very broad, categorically includes conduct much less serious and involving victims much older than victims of the Oregon Rape III statute, an interpretation that this Court then subsequently affirms as proper, as well as this Court's own interpretations that hold that the use of young children, including children over the age of 14, categorically constitute for sexual gratification, categorically constitutes sexual abuse of a minor. And the Barron-Medina case involved conduct that was — that did not even involve necessarily interpersonal conduct with the victim, whereas, of course, this case involved actual rape, that is, sexual penetration of a victim under the age of 16. Let me make sure — let me make sure I understand what you're arguing. Are you arguing the point now that what, that the law was clearly established? Yes. In the way you're explaining it? Quite plainly, yes. And that's never been the case. Even though it turned out to be wrong? It did turn out to be wrong when this Court reversed a long series of its own decisions almost five years later, yes. So that, you know, when the case law is, I'll just say, solid enough, the I.G.A. is entitled to rely on that, and, you know, these new cases don't apply in terms of a retroactive, retroactively taking a second look. Is that your argument? Well, there are two points I'd want to make on that. First of all, this case does not at all involve actual eligibility. The question is not whether, in a platonic sense, under — in a world in which the proper interpretation according to Estrada-Espinosa was known to all parties or could be divined by all parties applied. The only question is whether he was apparently eligible, whether it was properly foreseeable by the I.G.A. that Estrada-Espinosa would be handed down and would appeal to this Court. We now know, beyond a shadow of a doubt, it would not have helped this defendant at all. And so it's not so much whether he was actually eligible in light of the case law at the time. The question is whether he was apparently eligible, and he plainly was not, and Estrada-Espinosa has no effect on his apparent eligibility. So when this — when the defendant argues citing a bunch of appeals for — or petitions for review of — of removal orders directly from the Board of Immigration Appeals, those cases are inabsent. Here we're just talking about the validity of his waiver of appeal and administrative relief and his capacity to launch the collateral attack at issue here. He had no capacity because he validly waived appeal because it was properly advised based on this Court's case law at the time. I also do want to emphasize that it is not our position that the defendant wasn't, even as an actual matter, eligible for — or was, as an actual matter, eligible for voluntary departure. Our argument is to the contrary, that he wasn't, because he admitted that he was 5 years older, at least. He was, in fact, 6 years older than the victim in that case in his plea petition. Kagan. This is your modified categorical argument? Pardon? This is your modified categorical argument. Exactly. Which is, I should emphasize, an alternative basis for reversing the district court. But we think either under Lopez-Velasquez or under — It's neither here nor there, because that's not a required element of the statute, is it? It's not a required element, but Aguila Montes de Oca held that for purposes of the modified categorical determination, it needn't be required as an element of the offense. It need only be necessarily found within the documents that are available under Shepard. Well, but it had to be a necessary part of the defense of the government's theory, and it was because there is no age limit of any sort. It wasn't a necessary part of anything, right? He just wrote down what his age was. It was necessary insofar as the affirmative defense of an age difference made it centrally relevant to the conviction in that case. And trial courts in Oregon are required to assess the defendant's age and capacity to make a plea, as well as the availability of affirmative defenses. And as this Court held in United States v. Asbury, the availability of that affirmative defense made the Oregon Rape III statute materially indistinguishable from the Federal statute, which also required an age difference of 4 years. Is there a statutory basis for the affirmative defense of an age difference in the Oregon law? Yes. What do you do? Can you cite what the statute is? Yes. It's Oregon revised statute 163345 on the same page in the Oregon code book as the Rape III statute, which is subsection 355.  between the two. But it's an affirmative defense in quasi-consensual cases. If it's less than 3 years. Yes. 3 years or less. Yes. And as this Court has already held, you know, if the – if there's an age difference at issue in the case for purposes of criminal culpability, that is plainly within the parameters of modified categorical approach. So your position is that when the Washington County Circuit Court judge took the plea, he necessarily had to determine that the defendant was not eligible for the affirmative defense in order to determine that he was, in fact, guilty of rape in the third degree? In order to take a valid plea, he had to make a finding that the defendant's age did not give rise to a plainly available affirmative defense. Why would he have to do that? Does he have to make a affirmative – find that the defendant was not insane? I mean, there are a whole bunch of affirmative defenses. In order to take a constitutionally valid plea, yes. If the defendant was insane and the district court failed to take account of that, he could collaterally attack his conviction based on the fact that it was an invalid, involuntary plea. I've never heard that before, that in other words, for a plea to be valid, it has to dispel all affirmative defenses that could possibly be applied. Can you cite a case to that effect? Well, the Oregon Supreme Court had published a case that held that trial courts in taking pleas must consider the defendant's age and the availability of affirmative defenses in order to anticipate and dispel the possibility of collateral attacks on criminal convictions. So it's not, of course – Is that cited in your brief? Is that case cited in your brief? Yes, it is. Mr. Bowne, you've run over about four minutes. Sorry. If I could reserve one minute just for rebuttal, Your Honor. I'll give you a minute on rebuttal. Let's hear from counsel for Mr. Vidal-Mendoza. Thank you very much. And I'll give you a little extra time, please. Good morning. It's our position that deportation here – this deportation hearing violated the defendant's due process rights because the I.J. misadvised the defendant that he was ineligible for relief from deportation because of the purported aggravated felony conviction. Well, he didn't misadvise him at the time, did he? It's our position that what constitutes advice for the purposes of this appellate proceeding, for the purposes of the district court's determination is what the law was. Was or could be. Well, what the law was, because judicial interpretations of law under clear precedent Well, when we say was, was at a given time. The law with respect to what constituted sexual abuse of a minor for the purposes of the Immigration and Nationality Act was determined by this Court in Estrada v. Espinoza. But that was after the deportation hearing. Correct. At the time. So if we go back in 2004, what –  Is that the position you're taking? No, no, no. He has to be able to divine a change in the law by the Ninth Circuit years later? That's a focusing on what the I.J. did at fault. And I think that that's the – not the appropriate way to look at that. Well, let's come at this a different way. Do you agree with Mr. Bounds that in 2004, this crime constituted sexual abuse of a minor under then-applicable precedent of both the Board of Immigration and Nationality Act and appeals and the Ninth Circuit Court of Appeals? In 2004, I think the law was less settled than Mr. Bounds would suggest. Counsel, it's a simple question. Either you agree with him or not. If the answer is no, then you can tell me why you disagree with him. It's a – can you answer my question, yes or no? And I do disagree. All right. Now, tell me why you disagree. And I disagree because I think the law was more complicated at that time. If we go back in 2004, there are a number of cases, Barron-Medina, and I think the only other case that was decided by the Ninth Circuit prior to the 2004 deportation hearing was Pereira-Salmarón. Both of those cases were interpreting what constituted, under what circumstances sexual abuse of a minor constituted an aggravated felony for the purposes of the Federal sentencing guidelines. In Barron-Medina, the determination was that there was a 16-level enhancement under 2L1.2 for what at that time was an aggravated felony enhancement, and Pereira-Salmarón, which was decided in 2003, was an issue of crime of violence. In Rodriguez-Rodriguez, we have the BIA making a sort of a wide-sweeping decision about various factors that immigration judges could consider in determining what constituted. Let me see if we can get down to what's at issue. If so, in view of, you know, your interpretation of the existing case law at the time, what should the I.J. have said? The I.J. should have advised Mr. Vidalman that the law is unsettled, that the legislation should be changed. It says I don't know what to tell you because there are these cases all over the place. Is that what he should have said? Well, I think in these decisions, it's an open question what the I.J. could or should have said. And I think the focus is, in all the decisions that this Court and other courts have made. Well, if it's an open question, then? It's an open question in terms of what the I.J. could have said. Our position is that the I.J. should have advised the Mr. Vidalman at that time that he was eligible for voluntary departure, that his conviction was not an aggravated felony, because it was not then and it is not now an aggravated felony. So that's not based on the existing case law, because the existing case law, even if there was not a construal of that statute, opposing counsel argues well, and the a conviction for that sort of crime reasonably applying the case law would be a sexual abuse of a minor. So although it's possible that the law could change, there was certainly nothing that would have told the I.J. it was not a sexual abuse as a minor was there? Well, the law did the law, in my opinion, did not change. When Estrada Espinosa, the law did change. The law changed when Estrada Espinosa made the decision, because Estrada Espinosa overruled Afredi, but Afredi was decided in 2006. Estrada Espinosa did not overrule Barron Medina and the other decisions that were looking at and defining sexual abuse under the Federal Sentence Guidelines. Indeed, this Court recently, or in 2009, in Medina Villa, specifically states, and I'm quoting, "...rather than overruling Barron Medina, we affirmatively relied upon it in Estrada Espinosa." So there were cases out there in 2004 in other contexts that had interpreted sexual abuse of a minor under the Guidelines. The Ninth Circuit had not interpreted sexual abuse of a minor for the purposes of the Immigration and Nationality Act. If that's the case, then why couldn't the immigration judge rely on the NBANC BIA decision in Rodriguez-Rodriguez if you're telling us this was an open question under Ninth Circuit law? Because there's no Ninth Circuit precedent that would tell him he's wrong. There was no Ninth Circuit precedent telling him that he was right on this issue Counsel, he's got a BIA decision that says you interpret it broadly, and he has no Ninth Circuit decision that says that interpretation is wrong. So what is he supposed to do? I have the same question. In fact, isn't he bound by a precedential BIA decision? Well, Rodriguez-Rodriguez has been interpreted by Estrada Espinosa as not, as a precedent for a decision on point, rather a case that provided guidelines for analysis. It was, therefore, a case that was not, in this Court's opinion, entitled to deference under a Chevron analysis. It was simply a road map for courts to consider. But let me ask you this, just to get to the more general rule. If there had been a Ninth Circuit case on point that told the I.J. this sort of prior crime of conviction is sexual abuse of a minor, and the I.J. had said, sorry, you're not eligible for voluntary departure because you were convicted of an aggravated felony, would that statement have been immune from collateral attack under 132060 subsequently? Do you agree with that general principle? I don't, because I think even if there had been a Ninth Circuit decision on point, when the Ninth Circuit subsequently decided this issue, that Ninth Circuit decision is the statement of what the law is and always was. It applied at the time, retrospectively, to that prior proceeding. And while the I.J. may not have been aware of that, would not have had the foresight of that, and therefore, to use the issue of fault, that there was some error that can be attributed to the I.J., I think is not the proper. Well, the error is his inability to divine what the Ninth Circuit would later declare. And we have case law that says I.J.s don't have to be clairvoyant. And I.J.s can't be clairvoyant. Nobody can be clairvoyant. But you're arguing that he must be, otherwise it's error. No. What I'm arguing is that when a defendant is subsequently processed and prosecuted in a Federal prosecution for illegal reentry, and one of the elements, one of the This Court, and the district court, has the hindsight and the foresight that the immigration judge lacked to assess due process issues, that that deportation cannot support a criminal prosecution. But in Lopez Velasquez, we said we normally don't do that, that the correct procedure would have been a motion to reopen before he illegally reentered into the country. And said it's limited, that sort of retrospective look, is limited to narrow circumstances. What are those narrow circumstances? Because what you're describing would be all circumstances where there's a change in the law that subsequently benefit a person being prosecuted under 1326. Well, it would not include a change in statute, because the principle is that statutes changes in statutes apply prospectively, judicial decisions apply both retrospectively and prospectively. The St. Cyr cases were saying that the I.J. Erd in not understanding that the new statutes didn't apply retroactively, so I'm not sure your line actually works. I believe that the error was in that the judicial interpretation of that statute, which is saying what the statute always was, was the St. Cyr Supreme Court decision. The St. Cyr involved this element of detrimental reliance, which essentially constituted the prejudice prong of the due process analysis. And the problem here, for your argument, is your client in 2004, when he was convicted in Oregon, wouldn't be able to show detrimental reliance, because the state of the belief, because it did, under the BIA's interpretation, constitute sexual abuse of a minor. So his decision to plead guilty, unlike the defendant in St. Cyr, who pled guilty because he relied on the fact that there were no adverse immigration consequences from the fact that he pled, is not the same situation that your client faced in 2004 in Washington County. Well, to answer both of those questions in turn, with respect to the more recent one, what would have happened had the I.J. informed Mr. Vidal-Mendoza properly is that he could have applied for a voluntary departure and would have substantially affected. Well, in 2004, that would have been denied, though, would it not? So we said, in Melinda's cast, or I think it was a recent decision, we said, where the I.J. says, you're eligible for this relief, but I won't grant it because you have an aggravated felony conviction. We said, that's the same as saying you're not entitled to an aggravated, you're not entitled to the relief. So isn't that what the I.J. would have done in this case? You're theoretically entitled to voluntary departure, but in my view, you were convicted of an aggravated felony, so you're not eligible. And so it doesn't really make a distinction in this case. In fact, in the I.J. did inform Mr. Vidal-Mendoza that he was not entitled to any relief because he had an aggravated felony. At the same time that this was taking place, we have another case by this Court that had a different turn of events. In Palaio Garcia, which was a 2004 proceeding, the I.J. concluded that the defendant had an aggravated felony, denied Mr. Palaio's request for voluntary departure that involved a California statutory rape conviction that subsequently, in light of Estrada-Espinoza, was determined not to be an aggravated felony. That individual, Palaio Garcia, appealed the decision, and the Ninth Circuit held that the I.J. was incorrect, that it was not an aggravated felony, that the I.J. was in error, and in fact, Mr. Palaio Garcia was entitled to relief, and therefore the judge. Kagan That was a direct appeal, though, right? That wasn't a collateral attack. Saharsky But this Court has held, even though Estrada-Espinoza had not been decided, even though the I.J. did not have that clairvoyance or foresight of what this Court was going to hold, that that was a flawed deportation proceeding, and the I.J. was in error. Kennedy Okay. I've let you run over 4 minutes, too, so your time has expired. Thank you, Ms. Russell. Mr. Malz, I'll give you a minute on the rebuttal. Malz Thank you very much, Your Honor. It is of critical importance that this Court recognize that what is at issue here is not whether the defendant was actually eligible, whether the I.J. thus correctly interpreted the statute in light of all available precedents from this Court, subsequent as well as precedent. What is at issue is only whether he was apparently eligible for voluntary departure, whether it was apparent that he had not committed an aggravated felony, and therefore he was entitled to advice that he was eligible for voluntary departure, and it was not apparent. What is apparent is if that he had been so advised. Kennedy I don't think the case is used the term apparent. I think it's whether he had a plausible ground for relief. Malz Well, it's apparent eligibility under the regulation has been interpreted by this Court to mean whether he was, whether relief was reasonably plausible. Plausibility is the prejudice inquiry as to whether it would have been granted. But they're similar, to be sure. But it's not only implausible, it's patently impossible that the IJ's reliance on the yet to be decided Estrada Espinosa would have resulted in relief for this defendant. Kennedy No, no, no. It depends on, you know, what the procedure is in determining whether there's a reasonable ground or whether it's plausible or not. The first question is, is he legally barred from seeking relief, right? And I think it's at that point that the IJ erred in this case, if you take prospective law into account, right, because he is legally eligible for relief, isn't he? Malz Right. But the question is not whether he is eligible. The question is whether he was apparently eligible. Kennedy That's step one, all right, whether he's legally eligible for some kind of relief. Malz The only question that issue is apparent eligibility, not actual eligibility. Kennedy And then the second question is, you know, how much of a, I'll say, how much of a merit showing he has to make. And that's what you're arguing, right? Malz No. I'm arguing the threshold issue, whether he was apparently eligible for relief. And that, because that's what the standard that this Court has held. This Court has basically held that the apparent eligibility requirement under the regulation informs whether the defendant's Kennedy He is eligible under, I'll say, our new law, right? Because he's not an aggravated felon. Malz That is totally undisputed. For purposes of this inquiry, although our position is that he wasn't eligible in light of the Aguila Montes issue, he had admitted he was six years older than the victim. So he wasn't actually eligible either. But for purposes of the Lopez Velasquez question, we concede that under Estrada Espinoza, he may not have been eligible. Kennedy OK, so what's the next step? Malz That's the thread. We are relying on that threshold inquiry. He wasn't apparently eligible. It cannot be plausibly argued that he didn't intelligently decide to waive appeal and, therefore, that the waiver was invalid and, therefore, excused, and thus allowing him to make this collateral attack. Had he sought voluntary departure and had the I.J. granted it, the Board of Appeals inevitably would have reversed, and this Court would have inevitably approved the Board of Appeals. Kennedy Reversed on what? For what reason? Malz Because it would have been contrary to the Court's interpretation, the Board's interpretation in Rodriguez-Rodriguez. So we're asking whether he's excused from exhausting administrative remedies.  Yes. Malz What we've said is if the I.J. misinforms the alien as to eligibility for relief, that's the same that excuses his exhaustion because he can't appeal when he's been given this misinformation. Kennedy Yes. So the standard we're looking at is when is he excused? When is the alien excused from exhausting administrative remedies? When did the – because the I.J. misinformed him? What is that standard for misinforming the alien? Correct? Malz Exactly. Whether the standard for misinformation is the law of this Court at the time or the law as this Court years later may determine it to be. And we're not arguing about the substantive retroactive application of Estrada-Espinoza. We are arguing about whether the substantive application of that from a decision years after the fact has any bearing on the considered and intelligent waiver of appeal. And it cannot because it would have done it. Kennedy I know what you're saying is even though we applied the law retroactively, even under that legal regime, there's no plausible basis for relief? Is that what you're – is that your argument? Malz There wasn't plausible. Apparent – Kennedy There was not. Malz Apparent eligibility as opposed to actual eligibility has to mean apparent at the time. And that's what the Court held in Lopez-Velasquez. Kennedy Even under retroactive law, he was not – apparently he didn't show apparent eligibility. Is that your argument? Malz No. Our argument is that the law is not retroactively applied for purposes of determining apparent eligibility as opposed to actual eligibility. This alien was not apparently eligible. Kennedy All right. All right. I'm glad you clarified it because I missed it. In fact, I'll have to write that down. Malz Thank you very much. Kennedy While you're writing that down, I'm going to have you sit down. Malz All right. Thank you very much. We do ask for the reversal of your support. Kennedy Thank you. The argument actually was very helpful. And we appreciate it very much.
judges: Tashima, Tallman, Ikuta